EDWARD DUDLEY, PLAINTIFF IN ERROR, v. THE CAMDEN AND PHILADELPHIA FERRY COMPANY, DEFENDANTS IN ERROR.

1. The liability of a ferryman with respect to property retained by a passenger within his own control and management is not the same as that incurred with respect to goods delivered to him and placed within his control for transportation. With respect to the latter, the ferryman undertakes for their safe carriage as against all perils but such as arise from the act of God or the public enemy; with respect to the former, his duty is to provide his boat with such means and appliances as are adapted to the security and safety of the passenger and his property, and to use such means and appliances with skill and care. For a failure in the performance of this duty, the ferryman will be liable if injury result.

2. But if, in such a case, the passenger, by negligence in the care of property of which he retains control, contributes to its loss or injury, he cannot recover of the ferryman, though negligent.

Dudley v. Camden and Philadelphia Ferry Co.

On error to the Supreme Court.

For the plaintiff in error, *T. H. Dudley* and *P. L. Voorhees.*

For the defendants in error, *E. T. Green.*

MAGIE, J. This action, when first tried, resulted in a verdict for the plaintiff in error, who was plaintiff below. That verdict was set aside by the Supreme Court, and a new trial granted. *Dudley* v. *Camden and Phila. Ferry Co.*, 13 *Vroom* 25. Upon the second trial, a non-suit was directed at the close of the plaintiff's case. Exception was taken to this ruling, and the main insistment upon the argument of this writ of error has been that such ruling was erroneous. The action was brought to recover damages for the loss of a pair of horses and injury to a carriage and harness. The horses, while harnessed to the carriage, were driven by plaintiff upon one of the defendants' ferry-boats, and, while plaintiff was out of the carriage, became startled and rushed off the boat into the river, where they were drowned and the carriage and harness greatly injured. For this injury the plaintiff sought to hold the defendants, the ferry company, liable.

It is first argued that the non-suit was wrong, because the defendants were common carriers, and that, proof having been made that the injured property had been delivered to them for carriage over their ferry, and had not been safely transported, but injured and lost, a complete case had been made, entitling the plaintiff to recover. Appeal is made to the well-recognized liability of common carriers, who are said to undertake for the safe carriage of all goods entrusted to them against all perils but such as are occasioned by the act of God or the public enemy. A ferryman holding himself out as carrying such goods as are offered to him for carriage is doubtless a common carrier. The defendant company, by its charter, must be considered to have that character imposed upon it. For such goods as have been delivered to a ferryman and entrusted to his exclusive control, the ordinary and severe liability of a

common carrier will attach.   There seems to be no difference of opinion upon that subject.   But with respect to articles which the passenger upon a ferry-boat takes with him for transportation, and does not deliver into the custody of the ferryman, and of which he retains the control and management, there is a diversity of opinion.   On one hand it is held that in such a case the owner acts, in the control of his property, solely as the agent of the carrier, and that the responsibility of the ferryman is that of a common carrier, insuring the safety of the goods against all risks but the two excepted ones above referred to.   On the other hand, the ferryman has been held not to have entered into the ordinary undertaking of a common carrier with respect to goods, the management and control of which are retained by the owner, but that his liability is more restricted.   Upon this view, the duty of the ferryman with respect to property thus carried is to provide his boats with such means and appliances as are adapted to secure the safety of the passenger and his property, and the use of those means and appliances by himself and his servants with skill and care.   For failing to provide such means and appliances, or for the negligent or careless use of them, the ferryman is responsible if loss or injury result.

The view last stated was approved by the Supreme Court, (*Dudley* v. *Camden and Phila. Ferry Co., supra,*) and the cases sustaining it are collected in their opinion.   The conclusions arrived at are not only consonant to reason, but are in entire accord with the general rule respecting other common carriers, which requires a complete delivery and acceptance of the goods, and the exclusive control of them, in order to impose upon the carrier an absolute responsibility for their safety.   *Tower* v. *Utica R. R. Co.,* 7 *Hill* 47 ; *Brind* v. *Dale,* 8 *Car. & P.* 207 ; *East India Co.* v. *Pullen,* 1 *Stra.* 690 ; *Hutchinson on Carriers,* § 82, *et seq.*   It is proper to say that the leading case of *White* v. *Winnisimmet Co.,* 7 *Cush.* 155, which is among those sustaining this view, was not followed in Massachusetts in the later case of *Lewis* v. *Smith,* 107 *Mass.* 334.   It can hardly be said, however, that the latter case has

shaken the authority, or at least the unanswerable reasoning, of the opinion of Dewey, J., in the former case, for that opinion is neither cited nor alluded to.

The liability of the ferryman being thus established to be only for negligence, it is a corollary to the proposition (also sustained by the cases) that the owner who retains the control and management of his property on the passage is debarred from a recovery for an injury thereto if he has contributed to such injury by his own negligence. His retention of the control of the property binds him to the use of such care as is required on his part to prevent loss or injury.

It is next argued that if the defendants are liable only in this restricted sense, there was ample proof of actionable negligence on their part, and there was not such proof of contributory negligence on the part of plaintiff as justified the withdrawal of the case from the jury. If, upon the plaintiff's own case, it clearly appeared that he was guilty of negligence with respect to this property, contributing to its loss and injury, then the non-suit was proper, and the ruling complained of was not erroneous. *Pennsylvania R. R. Co.* v. *Matthews,* 7 *Vroom* 531; *Del., Lack. & W. R. R. Co.* v. *Toffey,* 9 *Vroom* 525. Negligence has been defined to be the absence of such care as duty requires to be used. *Willes, J., in Grill* v. *Gen. Iron Co.,* 1 *L. R., C. P.* 612. What care of property a person is bound to use must depend upon the circumstances, the character of the property, the situation in which it is placed, the events then happening in the vicinity, and the risks thereby incurred. The evidence of the plaintiff and his witnesses showed that the horses he drove were a pair of high-strung, well-bred and speedy colts, nearly five years old. One witness says they were "Fleeting Ray" colts. Another witness, who saw them driven upon the boat, says "they were a fine appearing pair of horses, rather restive." The plaintiff had broken them and frequently driven them across by the ferry. But there is nothing in the evidence to rebut the inference natural from this description of their ages and qualities, that they would be readily startled by any unusual noise or occur-

rence. The sequel proved that this inference would have been correctly drawn. These horses plaintiff drove on a ferryboat at Philadelphia, about half-past ten o'clock at night, intending to cross to Camden. One vehicle had preceded plaintiff on the boat, and occupied a sheltered position back of the engine-room. Plaintiff drove into the south passage-way until the side of the buggy was opposite the door of the engine-room. There was no vehicle in front of him in the passage-way or on the forward part of the boat. The boat was about to start on its trip, and shortly after plaintiff drove on board the bell tapped which, as plaintiff testifies, called the employees to their places for starting.

This, then, was the situation : a pair of spirited colts were placed in close proximity to the engine of the ferry-boat at the moment of starting, with nothing between them and the river but such barriers as it appears plaintiff knew were commonly used on these boats, and which he had a right to assume were then in use, viz., two chains and a rope stretched across the boat a few feet, at most, above the deck.

The question is whether, under such circumstances, the plaintiff exercised requisite care. What he did he describes as follows: " I looked about to get some one to blanket my horses, as is my usual custom, and not seeing any employee of the ferry within calling distance, I wrapped the reins around the whip on the right-hand side of the carriage, as I always do, and then took the blankets from underneath the seat of the carriage and put one on the deck, and with the other I blanketed the off horse ; I then passed around ahead of the horses, and started to blanket the near horse; throwing the blanket over him, I buckled it around his neck, and then, as the blanket had curled up on his back instead of covering his back, I stepped back to near the swingletree to pull the blanket over the rump and the back of the horse; I was talking to Mr. Caffrey nearly all the time from the time I arrived on the boat ; I was just about to walk to the heads of the horses to stand there while crossing the river, when the off horse took a step forward that brought the near front wheel

against the iron guard, which is about one or one and a half feet around the centre of the boat, and the noise caused by the wheel scraping the iron rim startled the horses; as soon as they started I made an attempt to push by the near horse to get to their heads, but the swingletree and front wheel caught me and fastened me to the side of the boat, scraping my legs.; Caffrey left his horse and ran to the hind wheels of my carriage, calling 'Whoa!' to the horses, and actually took hold of the hind wheel; the horses rushed through the lower passage-way and ran off the bow of the boat towards Camden, a little to the left of the centre of the boat." He also says that if he had been at the head of his horses they would not have moved.

Under such circumstances I have come to entertain no doubt that the plaintiff was not exercising the care of this property which was required of him on that occasion. In my judgment his duty required him to place himself and remain in a position where he might control, or at least have the opportunity and means of exerting all possible control of his horses if startled by any of the occurrences incident to the crossing. He should have retained the reins in hand or within reach, or should have stood at their heads. He did neither, but he voluntarily placed himself, at the instant of their mad, ungovernable rush, where he was incapable of either checking or making an effort to check them. That this was negligence is clear to my mind. It was negligence which undoubtedly contributed to the loss of the plaintiff's property. Indeed, if the most approved gates had been erected, and had been securely closed, it is doubtful whether, then, these young horses, thus left to themselves, would have been checked or preserved by them.

But it is strenuously contended that the blanketing of these horses was a necessity, which the plaintiff had a right to do under the circumstances, even though he thereby momentarily removed from the position in which he might have used means for controlling them. If some occurrence entirely unforeseen had rendered necessary plaintiff's removal from the

position of control, then it might have been a question for the jury to say whether the requisite care was exercised therein. But the necessity of blanketing his horses was well known beforehand to plaintiff. He carried blankets for that purpose, and was accustomed to use them on the ferry-boat. The risk of blanketing without aid was also well known to him, because he testifies that when he did not have a coachman with him he obtained a deck-hand to blanket his horses. At this time he attempted to do the work alone, and without any effort to retain within reach the means of controlling the horses. It is true that he says he saw no deck-hand near, but he neither called for one nor waited the very few minutes until the tap of the bell summoned them to their places for the starting, after which he could probably have secured their services. If the ferry company were bound to provide a deck-hand for that purpose, the company would doubtless be liable for an injury resulting from a failure in that respect. When a railway, under the requirements of its charter, had erected gates across a public highway, and a traveler, finding no servants of the railway attending to open the gates as it was their duty to do, undertook to open them himself, and was thereby injured, it was held that he was not entitled to recover, though he had a right to pass on the highway, and the opening of the gates was a necessity. *Wyatt* v. *Great Western Railway Co.*, 6 *B. & S.* 709. But where the passenger retains the custody of his property there would seem to be no duty to provide servants to aid him in that care. If plaintiff chose to take the risk of obtaining a deck-hand to aid him, and, failing in that, proceeded to incur the hazard of doing the work alone, I do not think he can shelter himself under the claim of a necessity which he brought upon himself. On the ground of contributory negligence the direction of a non-suit was therefore not erroneous.

This conclusion relieves us from the consideration of the question (much pressed on the argument) whether the defendants were liable to the plaintiff for anything but gross negligence, in view of the fact that the plaintiff was being carried

Dudley v. Camden and Philadelphia Ferry Co.

without compensation, his father being a director of the defendant company. It may not be improper to add, however, that since the evidence shows that the only barriers used at the end of the boat off which the horses plunged were two chains and a rope, and the evidence tended to show that but one chain was then up, and hung, at its centre, but a few inches from the deck, no non-suit, proceeding on the ground that the defendants were not guilty of gross negligence, (if that was the measure of their liability,) could have been sustained. Indeed, the whole case is one of a class in which the defendant escapes the consequences of conduct which seems to be grossly negligent solely because, upon well-settled principles, we are compelled to deny relief to a plaintiff contributing to his loss by his clear negligence, however slight.

Other exceptions were taken to the rejection of evidence offered to show the misconduct of the defendants, which, in view of the conclusions already arrived at, become unimportant.

PARKER, J. (dissenting.)   In this case it was clearly proved at the trial that the defendants were grossly negligent, first, in not providing sufficient means to prevent horses going off their ferry-boat into the river; secondly, in not having in proper position, at the time of the accident, the means they had provided.   The company had provided two chains and a rope, which, when in place, extended across the boat at or near the bow.   At the time of the accident, the rope and one of the chains were not in position, and the other chain, although extending across the boat, was only about three inches above the floor of the deck.   Instead of furnishing an obstacle to prevent the plaintiff's horses going off the boat, the open, unobstructed way served to invite the animals to go forward.   It was the duty of the company to have in position such appliances as had been provided the moment horses were driven on their boat.

I think the evidence does not prove contributory negligence on part of the plaintiff.   At the time the horses started he was putting blankets on them.   Careful persons driving on the

ferry-boat, to be transported over the river, always blanket their horses, to prevent wind-founder. While plaintiff was engaged in what he had a right to do, in what it was not only proper but necessary for him to do, the horses went forward towards the open space at the bow of the boat. In my opinion there is no proof of carelessness on part of the plaintiff. Upon alighting from the carriage, he wound the lines around the whip, which was in the socket, so as to be easily grasped if required. After blanketing one, he passed in front of the horses to the side of the other. In adjusting the blanket on this horse, he was obliged to step back a little, but the evidence does not show that he was at any time further back than the flank of the horse. At this moment the other horse took a step or two forward towards the opening, which defendants had left unobstructed, leading into the river. This movement brought the fore wheel of the carriage, on the side where plaintiff stood, against the guard around the engine-house, and this circumstance, which the most careful man would not anticipate, crowded plaintiff against the engine-room in such way as to prevent him from getting to the horses' heads or seizing the reins. He was near enough to have reached the heads of the horses or to have snatched the lines, had it not been for the unforeseen circumstance of being crowded against the engine-room. If every possible danger could be foreseen and guarded against, there would be no accidents. The law on the subject of contributory negligence does not require this. The rule is that as much care shall be exercised as persons of ordinary prudence observe under the circumstances. But if it be thought that the evidence does not clearly sustain the view I have expressed as to the alleged contributory negligence of the plaintiff, this question was, upon the proofs, at least fairly debatable.

Where contributory negligence is not clearly shown, but is a fairly debatable question, the case should go to the jury. The horses were young and high-spirited, but not wild nor ungentle.

Dudley v. Camden and Philadelphia Ferry Co.

I think the plaintiff should not have been non-suited, and vote to reverse.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, MAGIE, VAN SYCKEL, GREEN, KIRK, PATERSON, WHITAKER.　8.

*For reversal*—THE CHANCELLOR, DIXON, KNAPP, PARKER, REED, CLEMENT, COLE.　7.